**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHAD VICONOVIC, | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 4:20-CV-1591 |
| v. | ) | |
| | ) | Honorable Judge Benita Y. Pearson |
| VALLOUREC STAR, LP, | ) | |
| | ) | **JOINT MOTION FOR PRELIMINARY** |
| Defendant. | ) | **APPROVAL OF CLASS AND** |
| | ) | **COLLECTIVE ACTION SETTLEMENT** |
| | ) | |

## I.    INTRODUCTION

Plaintiff Chad Viconovic ("Representative Plaintiff," "Class Representative," or "Plaintiff"), on behalf of himself and the members of the proposed Settlement Class ("Settlement Class Members"), and Defendant Vallourec Star, LP ("Defendant"), respectfully move this Court for an order: (1) preliminarily approving the Settlement memorialized in the "Joint Stipulation of Settlement and Release Agreement attached hereto as **Exhibit 1** ("Settlement Agreement") under Rule 23(e) of the Federal Rules of Civil Procedure and the Fair Labor Standards Act ("FLSA"); (2) certifying a collective action under Section 216(b) of the FLSA and an Ohio state law class action under Rule 23 for settlement purposes only; (3) approving the form, content, and manner of notice to the proposed Settlement Class; (4) approving Representative Plaintiff as Class Representative; (5) preliminarily approving Representative Plaintiff's request for a service award; (6) designating Plaintiff's Counsel as Class Counsel; (7) preliminarily approving Class Counsel's request for attorneys' fees and expenses; and (8) scheduling a Fairness Hearing.

In support of this motion, the Parties submit the Settlement Agreement (*see* Exhibit 1) and its exhibits, which consist of the following documents and proposed orders:

Exhibit A:    Proposed Preliminary Order Approving Class and Collective Action Settlement and Notice ("Preliminary Order")

Exhibit B:    Class Notice to Eligible Class Members

Exhibit C:    Class Notice to Original Opt-Ins

Exhibit D:    Tolling Agreement

Exhibit E:    Proposed Final Order and Judgment Entry

The parties also submit the Declaration of David J. Steiner (*see* **Exhibit 2**) and a proposed estimated payment schedule to Settlement Class Members (*see* **Exhibit 3**).

Following the Fairness Hearing, the Parties will request that the Court grant final approval of the Settlement by entering the proposed Final Order and Judgment Entry attached to the Settlement Agreement as Exhibit E.

The following schedule sets forth a proposed sequence for the Settlement:

- Two (2) business days after Preliminary Approval: Defendant will provide Class Counsel a spreadsheet containing the names and last known addresses of the Settlement Class Members;

- Fourteen (14) days after Preliminary Approval: Class Counsel will mail Notice to the Settlement Class Members;

- Forty-Five (45) days after mailing of Class Notice: Last day for Settlement Class Members to "opt-out" of the Settlement and submit written objections to the Settlement;

- Approximately Fifty-Five (55) days after mailing of Class Notice: Class Counsel will file a Declaration verifying that the Class Notice was distributed, as well as any requests for exclusion from the Settlement;

- Sixty-Six (66) days after mailing of Class Notice: The Parties will move for Final Approval of Settlement (barring Defendant's exercise of its right to withdraw from and/or renegotiate the settlement upon an opt-out rate of 5% or more);

- Approximately one hundred (100) days after Preliminary Approval: Fairness Hearing **[DATE AND TIME TO BE SET BY COURT]**;

- Thirty-One (31) days after the Court's Final Order and Judgment Entry, if no appeal is filed: the Effective Date;[1] and

- Ten (10) business days after the Effective Date: Defendant will mail the Individual Payments to Participating Settlement Class Members, the Class Representative Payment to Representative Plaintiff, and the attorneys' fees and reimbursement of litigation expenses to Class Counsel.

As explained below, the Settlement Agreement was reached following months of arm's-length negotiations between the Parties, which were conducted by experienced counsel following investigation, and on the basis of mutual recognition of the strengths and weaknesses of each other's positions. The Parties submit that the Settlement Agreement satisfies all the criteria for preliminary settlement approval under federal and state law in that it is fair, reasonable, and adequate and within the range for approval. Accordingly, preliminary approval of the Settlement and notice to the Settlement Class Members is warranted at this time.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Lawsuit

On July 20, 2020, Representative Plaintiff Chad Viconovic filed this Lawsuit alleging violations of the FLSA and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111.03. *See* Compl., ECF No. 1. The Complaint sought certification of an opt-in collective action for the FLSA claims and Rule 23 class certification of the Ohio state law claims. *Id.*

In the Lawsuit, Representative Plaintiff alleges that Defendant violated the FLSA and the OMFWSA by failing to pay Representative Plaintiff and other similarly-situated employees for all time worked and overtime compensation at the rate of one and one-half times their regular

---

[1] If an appeal is taken, then the Effective Date shall be twenty (20) days after: (i) the date of final affirmance of an appeal of the Final Order and Judgment Entry, or the expiration of the time for a petition for a writ of certiorari to review the Final Order and Judgment Entry and, if certiorari is granted, the date of final affirmance of the Final Order and Judgment Entry following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the Final Order and Judgment Entry or the final dismissal of any proceeding on certiorari to review the Final Order and Judgment Entry.

rates of pay for all of the hours they worked over 40 each workweek.  Representative Plaintiff claims that he and other similarly-situated employees were only paid for work performed between their scheduled start and stop times, and were not paid for activities that he alleges constituted compensable work activities taking place before their scheduled start times or after their scheduled stop times, such as changing into and out of their uniform and routine safety gear; getting tools, equipment, and/or paperwork necessary to perform their manufacturing work; walking to and from their assigned area of the manufacturing floor; or performing their manufacturing work.  Representative Plaintiff also contends that Defendant did not round time punches correctly and failed to keep records of all of the hours worked each workday and the total hours worked each workweek by Representative Plaintiff and other similarly-situated employees.

On September 14, 2020, Defendant filed an answer to the Complaint disputing the material allegations both as to fact and law, denying liability to Representative Plaintiff or any Settlement Class Members, and asserting several affirmative defenses.  Defendant contends that it complied with all applicable laws, fully compensated Representative Plaintiff and all other Settlement Class Members for all work they performed for the Company, and paid them correctly under the law.  Defendant contends that none of its pay practices resulted in employees receiving less than the amounts they were entitled to under the law, including time spent on any of the activities alleged in the Complaint.  Defendant denies that Settlement Class Members are entitled to any compensation, damages (including liquidated damages), fees, or costs.  Defendant further contends that a two-year statute of limitations applies and disputes that the Lawsuit is appropriate for class or collective treatment but for this Settlement.

To date, 37 individuals, including Viconovic, have filed, and not withdrawn, consents to join the Lawsuit ("Original Opt-Ins").[2]

## B.    Negotiation of the Settlement

Between October 2020 and January 2021, the Parties engaged in informal yet comprehensive discovery regarding Representative Plaintiff's claims and Defendant's defenses to such claims.  This included the exchange of timekeeping and payroll records and a complete analysis of the Settlement Class Members' alleged overtime damages.

On January 25, 2021, the Parties engaged in a full-day mediation with a neutral, private mediator.  Shortly after, the Parties reached an agreement in principle.  Since that time, the Parties have exchanged multiple drafts of the settlement documents and negotiated over various terms via email and telephone conferences.  The terms of the Parties' settlement are formally and fully memorialized in the Settlement Agreement attached as Exhibit 1.

## C.    Key Settlement Terms

### 1.    The Settlement Class

For purposes of settlement only, the Parties agree that a Settlement Class should be certified under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), and Federal Rule of Civil Procedure 23 as defined below:

   a.    All current and former hourly and salaried nonexempt employees who performed work for Defendant in Ohio at any time between July 20, 2017 and May 2, 2021 who did not join the *Dobozy v. Vallourec Star* case[3]; and

   b.    All former and current hourly and salaried nonexempt employees who performed work for Defendant in Ohio at any time between August 28, 2019 and May 2, 2021 who did join the *Dobozy v. Vallourec Star* case.

---

[2] Three additional individuals—Antonio Hardy, Alexander Spencer, and Kelvin Slade—filed consents to join the Lawsuit but separated from Vallourec Star before July 20, 2017.  The Parties have agreed that Hardy, Spencer, and Slade are excluded from the Settlement Class because they did not work for Defendant during the relevant time period.

[3] "*Dobozy v. Vallourec Star* case" means the lawsuit styled *Dobozy v. Vallourec Star, LP*, Case No. 4:18-cv-01539-SL, in the United States District Court for the Northern District of Ohio.

The definition of the Settlement Class encompasses approximately 726 current and former nonexempt employees of Defendant who performed work at the Youngstown, Ohio location between July 20, 2017 (three years before the Complaint was filed) and May 2, 2021. Representative Plaintiff and the Original Opt-Ins are included in the Settlement Class and will be sent notice.

### 2.    *Settlement Payments*

Subject to the Court's approval of the Settlement, Defendant has agreed to pay a "Total Settlement Amount" of Eight Hundred Forty-Nine Thousand Dollars ($849,000.00), which sum will cover: (a) all of the individual payments ("Individual Payments") to Settlement Class Members who do not opt out of the settlement ("Participating Settlement Class Members"); (b) a class representative payment to Representative Plaintiff, in an amount not to exceed Ten Thousand Dollars ($10,000.00) ("Class Representative Payment"); (c) Class Counsel's reasonable attorneys' fees, in an amount not to exceed Two Hundred Eighty-Three Thousand Dollars ($283,000.00), which constitutes one-third (1/3) of the Total Settlement Amount; and (d) Class Counsel's reasonable expenses, in an amount not to exceed Five Thousand Three Hundred Thirty-Three Dollars and Thirty-Five Cents ($5,333.35).

The proposed estimated Individual Payments were calculated by Class Counsel and are reflected in Exhibit 3.  The Individual Payments are calculated proportionally based on each Participating Settlement Class Member's alleged overtime damages based on employment records provided by Defendant.[4]  The overtime damages are primarily calculated based on the amount of time each Settlement Class Member was clocked in prior to the start of each shift and

---

[4] The proposed Individual Payments reflected in Exhibit 3 are estimates of what each Settlement Class Member is expected to receive, before applicable withholdings, if he or she participates in the Settlement.  The final Individual Payments will be recalculated to account for any opt-outs or any variations in the amounts of the Class Representative Payment, attorneys' fees, or expenses approved by the Court.

after the end of each shift, in weeks in which Settlement Class Members worked over 40 hours. All Participating Settlement Class Members will be sent at least Fifty Dollars ($50.00), before applicable withholdings.

The Individual Payments will be issued as two settlement checks.  Fifty percent (50%) of all Individual Payments will be treated as wages, will be subject to the withholding of all applicable federal, state, and local taxes, employee 401(k) contributions, and any other required withholdings, and will be reported on IRS Form W-2.  The other fifty percent (50%) will be treated as payment in settlement of liquidated damages, will not be subject to withholdings, and will be reported as 1099 income.

### 3.      *Notice Procedure and Distribution Process*

The Settlement Agreement provides that Class Counsel will distribute a Notice of Proposed Settlement of Collective and Class Action Lawsuit, Right to Opt Out, and Fairness Hearing ("Class Notice") to each member of the Settlement Class.  There are two forms of Class Notices, which are largely identical: one Class Notice that will be sent to the Eligible Class Members, and one Class Notice that will be sent to the Original Opt-Ins.[5]  *See* Ex. 1-B; Ex. 1-C. The Class Notices explain the Lawsuit and the material terms of the Settlement, and will be personally tailored to reflect the estimated Individual Payment, before applicable withholdings, that the Settlement Class Member is expected to receive if he or she participates in the Settlement.  The Class Notices also provide instructions on how to opt out or object to the Settlement within the 45-day period, as well as information about the Fairness Hearing.

Settlement Class Members do not need to take further action to be sent an Individual Payment.  Each Settlement Class Member who does nothing or fails to opt out within the 45-day

---

[5] The term "Eligible Class Members" refers to all Settlement Class Members who are not Original Opt-Ins.

period will automatically be mailed his or her Individual Payment within ten business days after the Effective Date.  The checks for the Class Representative Payment and Class Counsel's attorneys' fees and expenses will also be mailed within ten business days after the Effective Date.

Settlement checks that are not presented for payment within 180 days from the date of the check will become void and will not be reissued, and those unclaimed funds will revert to Defendant.  Any Eligible Class Member who signs, endorses, deposits, cashes, and/or negotiates the Individual Payment will be deemed to have affirmatively opted into the lawsuit under the FLSA, 29 U.S.C. § 216(b).  As soon as reasonably practicable after the foregoing 180-day period, Defendant will file a declaration with the Court providing a list of all Participating Settlement Class Members, by name only, who cashed and/or otherwise negotiated their Individual Payments, as proof that those individuals have "opted-in" to the Lawsuit.

If more than five percent (5%) of Settlement Class Members opt-out of the settlement, Defendant has reserved its right to withdraw from and/or renegotiate the settlement.

### 4.     *Release of Claims*

Participating Settlement Class Members will release the Releasees (as defined in the Settlement Agreement) from:

> (a) all federal, state, local, and common law claims, rights, demands, liabilities, and causes of action, whether known or unknown, that were raised or could have been raised in the Lawsuit with regard to their wages, compensation, or hours of work, including, but not limited to, unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, costs, and expenses pursuant to the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Section 34A of the Ohio Constitution, or other applicable law, for the Released Period, and (b) any claims or demands for additional bonus payments, including Matrix Pay, related to Defendant's payment of the Individual Payments and Class Representative Payment (collectively, the "Released Claims").

The "Released Period" for Participating Settlement Class Members shall mean the period between July 20, 2017 and the date the Court enters preliminary approval.

Correspondence sent to each Eligible Class Member with the Individual Payment, and/or the Individual Payment itself, will contain language to the effect that the Eligible Class Member agrees that, by signing, endorsing, depositing, cashing, and/or negotiating the Individual Payment, he or she consents to opt-in to the collective action in the Lawsuit as a party plaintiff pursuant to the FLSA and agrees to release the Released Claims. Likewise, correspondence sent to each Original Opt-In with the Individual Payment, and/or the Individual Payment itself, will contain language to the effect that the Eligible Class Member agrees that, by signing, endorsing, depositing, cashing, and/or negotiating the Individual Payment, he or she agrees to release the Released Claims.

Representative Plaintiff has also agreed to a general release of claims against the Releasees that will become effective upon the Effective Date.

## III. <u>LEGAL ANALYSIS</u>

This proposed class and collective action settlement is subject to approval by the Court under Federal Rule of Civil Procedure 23(e) and the FLSA. As shown below, the Court's preliminary approval is warranted.

### A. <u>Preliminary Approval of the Settlement Under Rule 23 Is Warranted</u>

#### 1. *Certification of the Settlement Class Is Appropriate Under Rule 23*

A proposed settlement class must satisfy the requirements of Rule 23. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). The proposed Settlement Class satisfies those requirements.

For purposes of settlement, the proposed Settlement Class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See*

*Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW*, 497 F.3d at 626. The Settlement Class, consisting of approximately 726 members, is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

Commonality under Rule 23 "is met where the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012) (quoting *Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332, 338 (D. Minn. 1999)). For purposes of settlement, Representative Plaintiff contends that common issues of law or fact are presented by the Settlement Class's claims under the OMFWSA in satisfaction of Rule 23(a)(2), including:

a) Whether the time Settlement Class Members spent getting tools, equipment, and paperwork, as well as engaging in a shift transition with the outgoing shift, is compensable work.

b) Whether Defendant failed to properly pay the Settlement Class Members for compensable work activities before and after their scheduled shift times.

The proposed Settlement also satisfies the typicality requirement. "A proposed class representative's claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and [the] claims are based on the same legal theory.'" *Id.* at 185 (quoting *Little Caesar Enter., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997)). Where "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Id.* (quoting *Laichev v. JBM, Inc.*, 269 F.R.D. 633, 640-41 (S.D. Ohio 2008)). Here, in the context of this Settlement, typicality exists because Representative Plaintiff and every Settlement Class Member share the

same interest of recovering their allegedly unpaid overtime wages based on the same legal theory: that Defendant's alleged failure to pay for all compensable work violated the OMFWSA.

Representative Plaintiff contends that he is an adequate representative of the Settlement Class, in that he has common interests with other Settlement Class Members and he has vigorously prosecuted the interests of the class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Settlement Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority for purposes of settlement. *Senter*, 532 F.2d at 522; *UAW*, 497 F.3d at 626. The unpaid overtime issues presented under the OMFWSA predominate over any individual questions. Class-wide resolution of this controversy is superior to the alternative of litigating 726 individual suits. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (stating class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (stating of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

### 2.     *The Class Notices Satisfy Rule 23 and Due Process*

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the Settlement. *Bailey v. White*, 320 F. App'x 364, 367 (6th Cir. 2009) (quoting Fed. R. Civ. P. 23(e)(1)). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW*, 497 F.3d at 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well.  *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005)).  "Due process does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Id.* at 514 (citing *DeJulius*, 429 F.3d at 944).  The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Id.* (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records.  *See Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120-122 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975).  The Eighth Circuit noted that, in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), "the Supreme Court specifically held that individualized notice by mail to the last [known] address was the 'best notice practicable' in a class action." *Grunin*, 513 F.2d at 121.

In the present case, the proposed Class Notices satisfy these requirements.  Under the terms of the Settlement Agreement and the proposed Preliminary Order, the Class Notices will be sent to the members of the Settlement Class by first-class mail using the last known addresses shown in Defendant's records.

### 3.     *The Settlement is Fair, Reasonable, and Adequate*

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below.  *UAW*, 497 F.3d at 626 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *accord Sweet v. Gen. Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### a.    The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

As shown below and in the Steiner Declaration (*see* Exhibit 2), the seven-factor standard supports approval of the Settlement.

### i)    *No Indicia of Fraud or Collusion Exists*

The Parties' counsel each have extensive experience litigating FLSA and state wage-and-hour claims, including claims for unpaid hours worked. A Settlement Agreement was achieved only after arm's-length and good faith negotiations between the Parties, including formal mediation with a neutral mediator. As such, there is no indicia of fraud or collusion.

### ii)   *The Complexity, Expense, and Likely Duration*

*of Continued Litigation Favor Approval*

The policy favoring the settlement of class actions and other complex cases applies with particular force here.  Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.  Moreover, the Parties continue to disagree over the merits of the Settlement Class Members' claims, and this Lawsuit involves intricate issues of state and federal law that would take significant expense over a long period to resolve.  If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling related to several disputed issues, including, but not limited to: the propriety of class and/or collective certification, the validity of the Settlement Class Members' claims; the validity of Defendant's affirmative defenses; and the proper measure of damages.  The Parties will also incur significant expenses in connection with multiple depositions of fact witnesses and expert witnesses, class and collective certification briefing, dispositive motions, and trial preparation. The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Settlement Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.

### iii)    Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement.  Relevant information was exchanged, including timekeeping and payroll data, and the Parties independently conducted a complete analysis of the Settlement Class Members' alleged overtime damages. In addition, Class Counsel obtained investigation notes from Representative Plaintiff and numerous other employees who are members of the proposed Settlement Class, and the legal issues in the case were thoroughly researched by counsel for the Parties.  All aspects of the dispute are well-understood by both sides.

### iv)     The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that continued litigation will be uncertain in terms of duration, cost, and result. Defendant also raises affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well.  Moreover, both sides face significant risks on the potential class and collective scope of this matter.  Continued litigation would be risky for all.

Plaintiff's range of possible recovery is also open to dispute.  If this case is not settled, it is possible that the Settlement Class Members would receive no compensation.  Even if Plaintiff succeeds on the merits of the claims, the amount of recovery is uncertain, is something upon which the Parties continue to disagree, and will be subject to appeals.  Defendant contends that the Settlement Class Members were properly paid for all work, and if not, any unpaid time is *de minimis*.  By settling this Lawsuit at this relatively early stage of the litigation, the Parties and Settlement Class Members bypass the inherent risks of litigation and achieve finality on this matter.

### v)      The Opinions of Class Counsel and the Class Representative Favor Approval

 Class Counsel is experienced in wage-and-hour class actions, has acted in good faith, and has represented their clients' best interests in reaching the Settlement Agreement.  Class Counsel support the Settlement Agreement as fair and reasonable, and in the best interest of the Settlement Class as a whole, as described in the Steiner Declaration (*see* Exhibit 2).  "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference."  *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *5 (S.D. Ohio Aug. 17, 2018).

### vi)     The Reaction of Absent Class Members

If the Court approves the Settlement, the Settlement Class Members will be sent notice of the Settlement and will be given the option to object to the Settlement or opt out of the Settlement if they believe that the Settlement is not in their best interests.  Therefore, it is not yet possible to evaluate the reaction of the Settlement Class Members, but Representative Plaintiff anticipates a positive reaction given the substantial relief provided to the Settlement Class.

### vii)      Approval is in the Public Interest

"Public policy generally favors settlement of class action lawsuits."  *Wright*, 2018 WL 3966253, at *5 (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)).  Here, the Settlement "confers immediate benefits on the Settlement Class, avoids the risk and expense in further litigation, and conserves judicial resources."  *Id.*  Accordingly, this factor favors approving the Settlement.

### b.      The Settlement Distributions Are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to a class action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable."  *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999).  In the present case, the Settlement Agreement provides that the Total Settlement Amount, after deduction of the Class Representative Payment to Representative Plaintiff and attorneys' fees and expenses to Class Counsel, will be divided into Individual Payments for which Settlement Class Members will be eligible if they participate in the Settlement by not opting out.  All components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for Representative Plaintiff and the Settlement Class Members.

### i)      The Individual Payments Are Reasonable and Adequate

16

The proposed estimated Individual Payments in Exhibit 3 were calculated proportionally by Class Counsel based on each Settlement Class Member's alleged overtime damages, with each Settlement Class Member eligible to receive a $50.00 minimum payment.  The overtime damages were primarily calculated based on the amount of time each Settlement Class Member was clocked in prior to the start of each shift and after the end of each shift, in weeks in which Settlement Class Members worked over 40 hours ("Punch to Punch Calculations").

Representative Plaintiff contends that he and the Settlement Class Members performed compensable work at least 50% of the time they were clocked in prior to the start of each shift and/or after the end of each shift.  Defendant argues that the Settlement Class Members rarely, if ever, performed compensable work during the periods in question.

Using the Punch to Punch Calculations, and the three-year statute of limitations period under the FLSA, Representative Plaintiff contends that the amount of potential unpaid overtime owed to the Settlement Class Members equals approximately $753,000.00, assuming they were working 100% of the time they were clocked in.

If approved by the Court, the Proposed Settlement will provide substantial payments to Representative Plaintiff and the Settlement Class Members for alleged unpaid overtime compensation.

After deductions for attorneys' fees, expenses, and Representative Plaintiff's Class Representative Payment, the Settlement Class Members are eligible to receive approximately $550,666.65.  As such, Class Counsel calculates that the proposed Settlement recovers a substantial amount of potential unpaid overtime compensation allegedly owed under the three-year limitations period, when comparing differences between time punch records and compensation reflected in employee pay records, assuming that all the time is compensable work

time, after deductions for attorneys' fees, expenses, and the Class Representative Payment. Defendant maintains that it paid employees properly and that Representative Plaintiff and the Settlement Class Members would be entitled to nothing if the case were tried to a judgment. (See Paragraphs Nos. 34-36 of Exhibit 2 Steiner Declaration for Detailed Analysis of Recovery Calculations).

**ii)**     ***Representative Plaintiff's Class Representative Payment Is Proper and Reasonable***

Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper.  As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990): "Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent."  130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Prods. Antitrust Litig.*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re S. Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).  The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)); *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the

individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, the Steiner Declaration (*see* Exhibit 2) establishes that the proposed Class Representative Payment in the amount of $10,000.00 is proper and reasonable. Representative Plaintiff Chad Viconovic's services were extensive and effective.  In addition to bringing to Class Counsel's attention these claims in this case, he provided extensive factual information to Class Counsel and faithfully engaged in calls and other communications with Class Counsel and several calls with other Settlement Class Members.  He was also responsible for over 30 opt-in plaintiffs joining this case prior to any notice being sent.  Moreover, he subjected himself to the responsibilities of serving as a named plaintiff in a lawsuit against his former employer, and attended a day-long mediation and participated in follow up calls after the mediation until the case settled.

### 4.      *The Court Should Appoint Plaintiff's Counsel as Class Counsel*

Rule 23(g) governs the appointment of class counsel and sets forth four criteria to evaluate the adequacy of counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff's Counsel requests that the Court appoint Anthony J. Lazzaro and David J. Steiner of The Lazzaro Law Firm, LLC as Class Counsel.  As set forth in the Steiner Declaration, Plaintiff's Counsel satisfy the criteria in Rule 23(g).

### B.      Preliminary Approval of the Settlement Under the FLSA Is Warranted

### 1.      *The Court Should Conditionally Certify an FLSA Collective Action*

This Lawsuit is also appropriate for conditional certification under the FLSA.  The FLSA permits employees to bring a collective action on behalf of "similarly situated" employees.  29 U.S.C. § 216(b).  A court may conditionally certify an FLSA lawsuit as a collective action so that similarly-situated employees receive notice of the action and the proposed settlement.  *Jones v. Agilysys, Inc.*, No. C-12-03516-SBA, 2013 WL 4426504, at *2 (N.D. Cal. Aug. 15, 2013).

In the Sixth Circuit, certification of an FLSA collective action typically consists of two stages.  *See Waggoner v. U.S. Bancorp.*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015).  At the initial stage, the court determines whether potential plaintiffs are "similarly situated" for purposes of sending notice.  *See id.*  Generally, at the first stage, a "fairly lenient" standard applies, which is less stringent than the required showing under Rule 23.  *See id.* at 764-65.  The court applies a stricter standard at the second stage, which typically occurs at the close of discovery, to decide whether the action should continue as a collective action.  *See id.*

The first-stage standard applies in the settlement context where certification is subject to final approval at a later date.  *See, e.g.*, *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 471 (E.D. Cal. 2010); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1124 (E.D. Cal. 2009).  First-stage notice may be proper where putative class members allege that they "suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy provides a violation as to all the plaintiffs."  *Waggoner*, 110 F. Supp. 3d at 765 (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)).  Here, Representative Plaintiff alleges that the Settlement Class Members were subject to the same workplace policies and practices that resulted in Defendant's alleged failure to pay them wages to which they were entitled under the FLSA.  Accordingly, conditional certification of the Settlement Class under the FLSA is appropriate for purposes of settlement.

20

### 2.   *The Settlement Meets the Requirements for the Settlement of FLSA Claims*

FLSA settlements reached as a result of contested litigation are subject to court approval. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).  A district court evaluating a proposed FLSA settlement "must scrutinize the proposed settlement for fairness, and determine whether the settlement is a 'fair and reasonable resolution of a *bona fide* dispute over FLSA provisions.'"  *Batista v. Tremont Enters.*, No. 1:19-CV-361, 2019 WL 3306315, *1 (N.D. Ohio July 22, 2019) (Pearson, J.) (citations omitted).  Additionally, similar to class action settlements, in determining whether a proposed FLSA settlement is fair and reasonable, courts should consider the following factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

*Id.* (citations omitted).

A *bona fide* dispute exists with respect to the validity and strength of the Settlement Class Members' FLSA claim.  Throughout this litigation, Defendant has vigorously denied and continues to deny liability.  The parties dispute whether the Settlement Class Members were properly compensated under the FLSA, and if not, how much time, if any, they allegedly worked without compensation, and whether they are entitled to their claimed overtime compensation under the FLSA.  Furthermore, a *bona fide* dispute exists as to whether the two-year or three-year statute of limitations applies and whether the Settlement Class Members would be entitled to liquidated damages, as Defendant claims it did not act willfully and has a good faith defense.

Additionally, the Settlement was the result of arm's-length negotiations resulting in a fair and reasonable settlement for the Settlement Class Members.  As discussed in detail above, the analysis of the various factors supports approval of the Settlement.

**C.**      <u>**The Attorneys' Fees and Expenses to Class Counsel Are Proper and Reasonable**</u>

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).  The OMFWSA, which is interpreted in accordance with the FLSA,[6] also provides that the defendant is liable for "costs and reasonable attorney's fees." O.R.C. § 4111.10.

In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."  *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc*., 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here.   Fulfilling *Fegley*'s emphasis on "encourag[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel.  The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible."  *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Props., Inc.*, 9 F.3d

---

[6] *See Douglas v. Argo-Tech Corp*., 113 F.3d 67, 69 n.2 (6th Cir. 1997); *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 732 (S.D. Ohio 2006).

513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved")); *accord In re Revco Sec. Litig.*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach . . . provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

In determining the reasonableness of the one-third fee, the *Bessey* court considered the comparative data about Rule 23 class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to-date was conducted by the National Economic Research Associates, an economics consulting firm.  That data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study").  <u>This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement</u>.

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Ex. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages.  Measured against that standard, the Settlement in the present case is exemplary.  (See Paragraphs Nos. 34-36 of Exhibit 2 Steiner Declaration for Detailed Analysis of Recovery Calculations).

The $283,000.00 in attorneys' fees requested by Class Counsel, which constitutes one-third of the Total Settlement Amount, should not be altered because Class Counsel efficiently resolved this case early on rather than prolonging the litigation and increasing his potential fees.

As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation."  Manual for Complex Litigation (4th) § 14.121.

Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation.  At every step of the litigation, Defendant could have succeeded.  Therefore, the Settlement Class Members were at great risk for non-payment.  This risk of non-payment strongly supports the amount requested here and warrants notice to the class of Class Counsel's attorneys' fee request.

The Settlement Agreement provides that Class Counsel will be reimbursed for expenses in an amount not to exceed $5,333.35, which is Class Counsel's current estimated expenses.  All such expenses were and/or will be incurred in the course of this action for the purpose of preserving, proving, and presenting the claims of Representative Plaintiff and the Settlement Class Members.  The most significant costs include the administration of the Class Notices (approximately $2,356.35), the mediator's fee ($1,500.00), and the filing fee ($400.00).

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e) and the FLSA.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Parties respectfully request that the Court grant this motion and enter the proposed Preliminary Order attached to the Settlement Agreement as Exhibit A.

Respectfully submitted,

s/ David J. Steiner                                      s/ Robert G. Lian, Jr.
Attorneys for Plaintiff Chad Viconovic       Attorneys for Defendant Vallourec Star, LP

Anthony J. Lazzaro                                    Robert G. Lian, Jr. (Admitted *pro hac vice*)
Ohio State Bar No. 0077962                       D.C. Bar No. 446313
David J. Steiner                                         AKIN GUMP STRAUSS HAUER & FELD LLP
Ohio State Bar No. 0075217                       2001 K Street, N.W.
THE LAZZARO LAW FIRM, LLC              Washington, D.C. 20006
The Heritage Building, Suite 250               Telephone: (202) 887-4358
34555 Chagrin Boulevard                          Facsimile: (202) 887-4288
Moreland Hills, Ohio 44022                       blian@akingump.com
Telephone: (216) 696-5000
Facsimile: (216) 696-7005
anthony@lazzarolawfirm.com                   Dan L. Makee
david@lazzarolawfirm.com                        Ohio Bar No. 0029602
                                                               MCDONALD HOPKINS LLC
                                                               600 Superior Avenue East
                                                               Suite 2100
                                                               Cleveland, Ohio 44114
                                                               Telephone: (216) 348-5400
                                                               Facsimile: (216) 348-5474
                                                               dmakee@mcdonaldhopkins.com

                                                               David W. Schelberg
                                                               Ohio State Bar No. 0098249
                                                               MCDONALD HOPKINS LLC
                                                               39533 Woodward Avenue
                                                               Suite 318
                                                               Bloomfield Hills, Michigan 48304
                                                               Telephone: (248) 593-2947
                                                               Facsimile: (248) 646-5075
                                                               dschelberg@mcdonaldhopkins.com

                                                               Courtney L. Stahl
                                                               Texas Bar No. 24088463
                                                               AKIN GUMP STRAUSS HAUER & FELD LLP
                                                               1111 Louisiana Street, 44th Floor
                                                               Houston, TX 77002-5200
                                                               Telephone: (713) 250-2140
                                                               Facsimile: (713) 236-0822
                                                               cstahl@akingump.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 1, 2021, a copy of the foregoing *Joint Motion for Preliminary Approval of Class and Collective Action Settlement* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

 /s/ David J. Steiner
Attorney for Plaintiff